UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHILOH BROWN,<br><br>                      Plaintiff,<br><br>  -against<br><br>THE CITY OF NEW YORK, and PO MIGUEL VANBRAKLE,<br><br>                    Defendants. | **COMPLAINT**<br><br>Docket: 25-cv-4253<br><br><br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1. This case is about a dishonest police officer, Miguel Vanbrakle, who planted evidence of gun possession on a man to secure his arrest and felony indictment. Executing a warrant at the home of his target's girlfriend, Vanbrakle found a revolver belonging to the girlfriend's grandfather inside a lockbox under her bed. In a separate room, Vanbrakle found a New York State ID card belonging to the suspect he wanted to arrest—and so he snatched the card from the other room, planted it inside the lockbox with the gun, and then used the physical proximity of the gun and ID card to draw a knowingly false connection between his suspect and the firearm.

2. The victim of this conduct, Shiloh Brown, was arrested, indicted, temporarily taken to Rikers Island, and remained subject to criminal prosecution for more than 400 days—before the criminal case was ultimately dismissed in its entirety. He brings the present action seeking recourse for this flagrant violation of his civil rights.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as claims in this action arise under 42 U.S.C. § 1983.

1

4.  This Court may exercise supplemental jurisdiction over the state law causes of action herein.

5.  Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b), because that is the judicial district in which the claims arose.

## MUNICIPAL LAW OBLIGATIONS

6.  Shiloh Brown timely served a notice of claim on or about March 5, 2025, within ninety of when his claims accrued.

7.  At the request of the City of New York, a 50-H examination was conducted on May 5, 2025, but since this date the claims have not been settled, adjusted, or otherwise withdrawn.

## PARTIES

8.  Plaintiff, Shiloh Brown, is a resident of the State of New York and brings the present suit in his individual capacity.

9.  Defendant City of New York is a municipal entity in the State of New York, home to the New York City Police Department and the Queens County District Attorney's Office and was the employer of all individually named defendants in this case, all of whom were acting in the scope of their employments under color of law at all relevant times.

10. Defendant PO Miguel Vanbrakle was at all relevant times a police officer in the New York City Police Department, and, except as otherwise alleged below, was acting under color of state law and in the scope of his employment. He is sued here in his personal capacity.

## FACTS

11. On October 16, 2023, the New York City Police Department applied for and obtained a warrant to search 233-18 121st Avenue in Queens, New York (the "Residence"), claiming probable cause to believe that the Residence housed a semiautomatic firearm or pistol belonging to Shiloh Brown, who allegedly lived in the Residence with two other males, no kids, and no dogs.

12. In truth, the Residence belonged to no "males," one woman, a three-year-old-child, and three dogs—and it housed no guns belonging to Shiloh Brown, and no semiautomatic guns at all.

13. In particular, the Residence did not belong to Shiloh Brown—which instead belonged to his ex-girlfriend Shanel Jackson, her and Shiloh's (then) three-year-old daughter, and three dogs.

14. Shiloh Brown occasionally visited and slept at the Residence, where he would usually sleep on a couch in a different room from Ms. Jackson.

15. In the vicinity of the couch where he slept, Shiloh Brown kept a New York State ID card ("Shiloh's ID Card").

16. The Residence had previously belonged to Ms. Jackson's grandparents, and her grandfather, an ex-police officer, had stored a Smith & Wessen revolver there in a lockbox underneath the bed that now belonged to Ms. Jackson (the "Grandfather's Revolver").

17. On or about October 19, 2023, Det. Vanbrakle and other members of the New York City Police Department executed the warrant at the Residence.

18. Upon entry into the Residence, Shiloh Brown was not there and the officers were greeted by Ms. Jackson—who informed Det. Vanbrakle and his colleagues of her Grandfather's Revolver.

19. In executing the warrant, Det. Vanbrakle and his colleagues did not find the semiautomatic weapon they claimed to believe would be inside.

20. In executing the warrant, Det. Vanbrakle did find the Grandfather's Revolver in the lockbox.

21. In executing the warrant, Det. Vanbrakle did find Shiloh's ID Card in a different room from the Grandfather's Revolver.

22. After finding the Grandfather's Revolver, Det. Vanbrakle took Shiloh's ID Card from the other room, placed it into the lockbox occupied by the Grandfather's Revolver, and then claimed that he found both items together in the lockbox in a fraudulent attempt to link the Grandfather's Revolver to Shiloh Brown (the "Lockbox Falsification").

23. Det. Vanbrakle repeated the Lockbox Falsification on police reports submitted to the New York City Police Department.

24. On October 19, 2024, Det. Vanbrakle and others effectuated the arrest of Shiloh Brown for, *inter alia*, criminal possession of a weapon (2nd degree) of a loaded firearm—a C felony; criminal possession of forgery devices; criminal possession of a firearm; unlawful possession of a skimmer device; and criminal possession of a controlled substance (the "Charged Offenses").

25. After seizing the Grandfather's Revolver, in January 2024 the New York City Police Department took and tested multiple DNA swabs from the gun. The report came back on January 22, 2024, indicating no match to Shiloh Brown.

26. To the extent law enforcement located forgery or skimmer devices or controlled substances, they had no connection to Shiloh Brown and belonged to Ms. Jackson's brother.

27. Less than 45 days later, on March 5, 2024, Det. Vanbrakle testified before a grand jury seeking the indictment of Shiloh Brown.

28. Det. Vanbrakle made a series of material misstatements and omissions in the grand jury designed to secure Shiloh Brown's indictment under false pretenses. This included:

   a. Falsely testifying that he recovered from the lockbox the gun alongside Shiloh's ID Card.

   b. Withholding the fact that, in truth, he had found Shiloh's ID card in another room.

   c. Withholding the fact that there were no DNA matches to Shiloh Brown on the firearm.

   d. Withholding evidence linking the firearm to Ms. Jackson's grandfather.

   e. Withholding the series of beliefs about the household that proved to be false, including that Shiloh and two other men resided there, and that it housed no children and no dogs.

(the "Bad Faith Grand Jury Testimony").

29. Pursuant to the Lockbox Falsification and the Bad Faith Grand Jury Testimony, Shiloh Brown was indicted.

30. Pursuant to the Lockbox Falsification and the Bad Faith Grand Jury Testimony, Shiloh Brown was incarcerated for two days.

5

31. Pursuant to the Lockbox Falsification and the Bad Faith Grand Jury Testimony, Shiloh Brown was subject to felony criminal prosecution and the conditions of bail for 414 days.

32. Pursuant to the Lockbox Falsification and the Bad Faith Grand Jury Testimony, Shiloh Brown had to repeatedly appear in criminal court and be subject to humiliation.

33. Pursuant to the Lockbox Falsification and the Bad Faith Grand Jury Testimony, Shiloh Brown suffered—and will continue to suffer indefinitely—extreme emotional distress.

34. All criminal charges against Shiloh Brown were dismissed on December 6, 2024.

## CAUSES OF ACTION

### FIRST:  MALICIOUS PROSECUTION UNDER 42 U.S.C. §1983
### as against Defendant Vanbrakle

35. Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

36. Defendant Vanbrakle initiated criminal proceedings against Plaintiff in New York City arising from the Lockbox Falsification and Bad Faith Grand Jury Testimony.

37. Defendant Vanbrakle intentionally lied in police reports, the grand jury, and to the District Attorney's Office about finding the Grandfather's Revolver in a lockbox with Shiloh's ID Card.

38. Defendant Vanbrakle lacked probable cause to believe that Shiloh Brown was guilty of the Charged Offenses, knew that he lacked probable cause, and fabricated evidence to help secure an indictment.

39. The criminal charges against Shiloh Brown were terminated in his favor as the case against him was dismissed.

40. Shiloh Brown's liberty was restrained post-arraignment, including by being sent on a bus to Rikers Island.

41. Shiloh Brown's liberty was restrained post-arraignment also by virtue of having to remain subject to the Court's orders and conditions on bail and pending the continuation of the criminal charges against him—a period that lasted 414 days.

42. Defendant Vanbrakle acted during all relevant times with actual malice -- prosecuting Shiloh Brown without probable cause, without the pursuit of justice, and instead to serve alternative goals including, but not limited to, obtaining credit and promotions for a felony gun arrest and to enhance his career.

43. Shiloh Brown suffered substantial damage from the malicious prosecution as set forth above.

44. In addition to compensatory damages, Shiloh Brown is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

45. Shiloh Brown is entitled to attorneys' fees under 42 U.S.C. §1988(b).

### SECOND:  MALICIOUS PROSECUTION UNDER STATE LAW
### as against Defendants Vanbrakle and New York City

46. Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

47. Defendant Vanbrakle initiated criminal proceedings against Plaintiff in New York City arising from the Lockbox Falsification and Bad Faith Grand Jury Testimony.

48. Defendant Vanbrakle intentionally lied in police reports, the grand jury, and to the District Attorney's Office about finding the Grandfather's Revolver in a lockbox with Shiloh's ID Card.

49. Defendant Vanbrakle lacked probable cause to believe that Shiloh Brown was guilty of the Charged Offenses, knew that he lacked probable cause, and fabricated evidence to help secure an indictment.

50. The criminal charges against Shiloh Brown were terminated in his favor as the case against him was dismissed.

51. Shiloh Brown's liberty was restrained post-arraignment, including by being sent on a bus to Rikers Island.

52. Shiloh Brown's liberty was restrained post-arraignment also by virtue of having to remain subject to the Court's orders and conditions on bail and pending the continuation of the criminal charges against him—a period that lasted 414 days.

53. Defendant Vanbrakle acted during all relevant times with actual malice -- prosecuting Shiloh Brown without probable cause, without the pursuit of justice, and instead to serve alternative goals including, but not limited to, obtaining credit and promotions for a felony gun arrest and to enhance his career.

54. Shiloh Brown suffered substantial damage from the malicious prosecution as set forth above.

55. In addition to compensatory damages, Shiloh Brown is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

56. Shiloh Brown is entitled to attorneys' fees under 42 U.S.C. §1988(b).

57. The City of New York is liable for the malicious prosecution of Shiloh Brown under a theory of *respondeat superior*, as at all times Defendant Vanbrakle and other agents of New York City responsible for the malicious prosecution were acting within the scope of their employment, for the City's benefit and under its control.

### THIRD: EVIDENCE-FABRICATION UNDER 42 U.S.C. §1983
### as against Defendant Vanbrakle

58. Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

59. Defendant Vanbrakle was an investigating official in connection with the Charged Offenses.

60. Defendant Vanbrakle intentionally fabricated that he found Shiloh's ID Card in the lockbox with the Grandfather's Revolver, which in reality he had planted there to help indict Shiloh Brown.

61. The intentional false report, repeated in police reports and, on information and belief, in other communications with cops and prosecutors, was at all times likely to influence a jury.

62. Defendant Vanbrakle forwarded the Lockbox Falsification to prosecutors.

63. Shiloh Brown suffered a deprivation of liberty as a consequence of the Lockbox Falsification.

64. In addition to compensatory damages, Shiloh Brown is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

65. Shiloh Brown is entitled to attorneys' fees under 42 U.S.C. §1988(b).

## FOURTH: EVIDENCE-FABRICATION UNDER STATE LAW
### as against Defendants Vanbrakle and New York City

66. Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

67. Defendant Vanbrakle was an investigating official in connection with the Charged Offenses.

68. Defendant Vanbrakle intentionally fabricated that he found Shiloh's ID Card in the lockbox with the Grandfather's Revolver, which in reality he had planted there to help indict Shiloh Brown.

69. The intentional false report, repeated in police reports and, on information and belief, in other communications with cops and prosecutors, was at all times likely to influence a jury.

70. Defendant Vanbrakle forwarded the Lockbox Falsification to prosecutors.

71. Shiloh Brown suffered a deprivation of liberty as a consequence of the Lockbox Falsification.

72. In addition to compensatory damages, Shiloh Brown is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

73. Shiloh Brown is entitled to attorneys' fees under 42 U.S.C. §1988(b).

74. The City of New York is liable for under a theory of *respondeat superior*, as at all times Defendant Vanbrakle was acting within the scope of his employment, for the City's benefit and under its control.

### FIFTH: ABUSE OF PROCESS UNDER 42 U.S.C. §1983
### as against Defendant Vanbrakle

75. Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

76. Defendant Vanbrakle participated in the issuance of criminal process against Shiloh Brown, including but not limited to his arrest, indictment and prosecution.

77. Defendant Vanbrakle intended to do harm to Shiloh Brown without justification, including but not limited to imprisoning him for crimes he did not commit because he represented a convenient target.

78. Defendant Vanbrakle used criminal process in an attempt to obtain a collateral objective, including but not limited to meeting his quota for arrests, getting credit and receiving promotions for the purpose of reputational and career advancement.

79. Shiloh Brown was damaged as a consequence of the abuse of process, including but not limited to loss of liberty as well as emotional and physical distress.

80. In addition to compensatory damages, Shiloh Brown is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

81. Shiloh Brown is entitled to attorneys' fees under 42 U.S.C. §1988(b).

### SIXTH: ABUSE OF PROCESS UNDER STATE LAW
### as against Defendants Vanbrakle and New York City

82. Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

83. Defendant Vanbrakle participated in the issuance of criminal process against Shiloh Brown, including but not limited to his arrest, indictment and prosecution.

84. Defendant Vanbrakle intended to do harm to Shiloh Brown without justification, including but not limited to imprisoning him for crimes he did not commit because he represented a convenient target.

85. Defendant Vanbrakle used criminal process in an attempt to obtain a collateral objective, including but not limited to meeting his quota for arrests, getting credit and receiving promotions for the purpose of reputational and career advancement.

86. Shiloh Brown was damaged as a consequence of the abuse of process, including but not limited to loss of liberty as well as emotional and physical distress.

87. In addition to compensatory damages, Shiloh Brown is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

88. Shiloh Brown is entitled to attorneys' fees under 42 U.S.C. §1988(b).

89. The City of New York is liable for the wrongdoing of Defendant Vanbrakle through the doctrine of *respondeat superior*, as at all times Defendant Vanbrakle and other agents of New York City responsible for the abuse of process were acting within the scope of their employment, for the City's benefit and under its control.

### SEVENTH:  NEGLIGENT HIRING, TRAINING, AND RETENTION
### as against New York City

90. Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein, except to the extent that these pleadings allege that Defendant Vanbrakle was acting within the scope of his employment.

91. Prior to the event forming the basis of this action, Defendant Vanbrakle had had <u>nine (9) substantiated or partially substantiated</u> allegations lodged against him for misconduct in the line of duty.

92. Defendant Vanbrakle had also been accused of scores of other acts of misbehavior while working for the New York City Police Department.

93. Defendant Vanbrakle had also been the subject of at least four different lawsuits brought against the City of New York.

94. Defendant Vanbrakle's troubles were so widely known, in fact, that he had received press coverage for his "questionable record[]." *See, e.g.,* Chris Gelardi, *Exclusive: Here Are the New NYPD Gun Units' Trainees. Many Have Histories of Excessive Force Complaints*, NEW YORK FOCUS (May 23, 2022).[1] *See also Program Allows NYPD Officers, Community To Have Important Discussions*, ABC7 (Sept. 24, 2020) ("Officer Miguel Van-Brakle is an alumni of the program," and the "Department chose [him] after he received a few complaints").[2]

95. The City of New York was aware of Defendant Vanbrakle's propensity to effectuate arrests without probable cause and through the fabrication of evidence.

96. Despite the substantiated allegations, and the many other allegations that had been lodged against him, and its own knowledge of his propensities, the City of New York retained Defendant Vanbrakle on the police force and had not seriously disciplined him.

97. It was reasonably foreseeable that Defendant Vanbrakle would fabricate evidence in the fashion that he ultimately did against Shiloh Brown.

98. Had the City of New York effectuated proper disciplinary measures as against Defendant Vanbrakle the fabrications relating to Shiloh Brown would not have occurred.

---

[1] Available at: https://nysfocus.com/2022/05/23/eric-adams-nypd-neighborhood-safety-team-roster
[2] Available at: https://abc7ny.com/post/nypd-police-officer-policing/6548948/

99. Had the City of New York effectuated proper disciplinary measures as against officers in the New York City Police Department who have fabricated evidence or falsely arrested or malicious prosecuted criminal defendants, the fabrications relating to Shiloh Brown would not have occurred.

100. In addition to compensatory damages, Shiloh Brown is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

101. Shiloh Brown is entitled to attorneys' fees under 42 U.S.C. §1988(b).

## DAMAGES

102. Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

103. As a consequence of the Defendants' conduct, Plaintiff suffered substantial damages, including loss of liberty, emotional distress, physical ailments and injuries, damage to his reputation, pecuniary damages, lost wages, and attorneys' fees.

104. The Defendants should be held liable not only to compensate Shiloh Brown for his damages, but also to pay exemplary damages large enough to dissuade such egregious misconduct from taking place again in the future.

105. The Defendants should be liable to pay attorneys' fees associated with this action as per the terms of 42 U.S.C. §1988(b).

[Please turn to next page.]

**WHEREFORE**, Plaintiff prays for relief as follows:

    A.    That the Court award compensatory damages to Plaintiff and against the defendants jointly and severally, in an amount to be determined at trial;

    B.    That the Court award punitive damages to Plaintiff, and against all defendants, in an amount to be determined at trial that will deter such conduct by defendants in the future;

    C.    That the Court award attorney's fees pursuant to 42 U.S.C. § 1988;

    D.    For a trial by jury;

    E.    For a pre-judgment and post-judgment interest and recovery of their costs; and

    F.    For any and all other relief to which they may be entitled.

Dated: Garden City, New York
        July 30, 2025

**BARKET EPSTEIN KEARON
ALDEA & LOTURCO, LLP**

By:   /s/ *Alexander Klein*
       Alexander Klein, Esq.
       666 Old Country Road, Suite 700
       Garden City, New York 11530